Johnnie SMITH, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Nov. 1, 1963.

As Modified on Denial of Rehearing

Feb. 14, 1964.

Frank G. Gilliam, E. Lawson King, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

Johnnie Smith, Jr., appeals from a judgment imposing a death sentence pursuant to a verdict finding him guilty of murder in killing with a knife his aunt by marriage. The sufficiency of the evidence to sustain the conviction is not questioned so it will be unnecessary in this opinion to state the circumstances of the killing. The appellant asserts 10 grounds of error, which we shall consider in the order in which they are set forth in the brief.

■ During cross-examination of the defendant the Commonwealth's attorney held in his hand a jacket and asked the defendant whether this was the jacket he was wearing at the time of the killing and whether after the killing he had attempted to wash blood from the jacket. It is contended that the display of the jacket, and the references to blood, were calculated to arouse the passions of the jury. The record indicates that the jacket was *rolled up* while being displayed by the Commonwealth's attorney, and, further, that there was no blood on the jacket at the time of the trial. The defendant had testified on direct examination that he got blood on his clothing at the time of the killing (which he claimed was done in self-defense). Under these circumstances it is our opinion that the displaying of the jacket, and the references to blood by the Commonwealth's attorney, could not have had any prejudicing effect.

The defendant was arrested in his mother's home a few hours after the killing. While in the home the arresting officers made a search. They testified on the trial that they found a man's jacket in the washing machine, partly washed, and with evidence of blood having been on it. The appellant maintains that this testimony by the officers, and the display of the jacket by the Commonwealth's attorney, were improper because the search by which the jacket was discovered was illegal, it having been made (it is contended) *before* the arrest and without consent.

■ The contention that the search was illegal cannot be sustained because, first, no objection was made to the search and no coercion was employed by the officers such as would induce the occupants of the house not to make an objection. See Hightower v. Commonwealth, 286 Ky. 561, 151 S.W.2d 39. Second, the premises searched were not owned by the accused and the place where the jacket was found was not in an area of the house of which he had exclusive occupancy, so he cannot complain of the search. See Combs v. Commonwealth, Ky., 341 S.W.2d 774; Lewis v. Commonwealth, 242 Ky. 628, 47 S.W.2d 66. Third, although it may be that the search preceded the arrest by a few moments, the search was practically contemporaneous with the arrest, and the arrest was not in any way a result of the search, because the officers came to the home for the express purpose of arresting the appellant. Under these circumstances the search was permissible as incidental to the arrest. See Manning v. Commonwealth, Ky., 328 S.W.2d 421; Commonwealth v. Puckett, 277 Ky. 131, 125 S.W.2d 1011; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. In any event, the evidence concerning the jacket could have had little if any effect in the determination of guilt.

■ The jury was out only 34 minutes. The appellant argues that this shows the

jury did not make due deliberation. There is no merit in this argument. See Beach v. Commonwealth, Ky., 246 S.W.2d 587, where the jury was out only eight minutes, and De Berry v. Commonwealth, Ky., 289 S.W.2d 495, where the jury was out only 20 minutes.

■ When the jurors left the courtroom for an evening meal recess, several large boxes containing folding army cots were standing in the hallway. It is argued that the presence of these cots may have created in the minds of the jurors the impression that unless they promptly returned a verdict they would be compelled to spend the night in the courthouse sleeping on the cots. The possibility of the jurors' thus having been influenced not to give due deliberation to the case is so remote that we could not in good conscience hold that the presence of the cots was a prejudicing factor.

■ The taking of evidence at the trial began around 2:45 p. m. A dinner recess was taken between 6:00 and 7:15 p. m. and the case then was completed in about two more hours. It is contended that prejudicial error was committed in holding the night session. This contention is fully answered by our decisions in Anderson v. Commonwealth, Ky., 353 S.W.2d 381, and Cassell v. Commonwealth, 248 Ky. 579, 59 S.W.2d 544.

■ In selecting the jury the regular panel was exhausted and bystanders were called. Appellant concedes that this was authorized by the Criminal Code (under which this case was tried), but he argues that bystanders tend to be in more of a hurry to decide a case than regularly summoned jurors, and that the fact that bystanders are not suitable is evidenced by the provision of the new Criminal Rules prohibiting the use of bystanders except by consent of the parties. We believe that the change made by the new rules evinces only the belief that it is better practice not to use bystanders—not that the use of bystanders is inherently prejudicial. We see no compelling reasons for not continuing to apply, in cases tried under the Criminal Code, the long-standing authorization for use of bystanders.

■ At the request of defense counsel the appellant was examined by a doctor, concerning his mental capacity to stand trial. The doctor certified that the appellant was mentally able to stand trial. The contention is made that the examination was not adequate because it was completed in ten minutes or less. However, the doctor made affidavit, in response to the assertion of inadequacy of the examination, that the time devoted to the examination was ample and the examination was adequate. There is no basis in the record upon which this court can question the doctor's judgment on this matter.

■ It is maintained that the court erred in admitting appellant's confession, because the evidence showed that the confession was obtained by use of physical violence. The answer to this is that there was no evidence that any violence was used in connection with the giving of the confession. The only evidence of violence at any time consisted of the appellant's testimony that when he was being put in the police car after his arrest, and was in handcuffs, one of the officers knocked his hands down when he attempted to raise them, and his testimony that later, when he was brought back to his mother's house, an officer struck him in the face when he attempted to go upstairs in violation of the officer's order. Both of these acts by the officers seem to have had justification, and they have no apparent relationship to the later giving of the confession.

■ The indictment charged that the killing was done with a knife having a seven-inch blade. The proof showed that while the knife had an overall length of seven inches, the blade was only three and one-half inches long. We find no merit in appellant's argument that this variance

between the indictment and the proof had a prejudicial effect.

When testifying in his own defense the appellant said that one of the officers struck him in the face when he attempted to break away from the officer and go upstairs in his mother's house. The officer was called in rebuttal and denied the striking. The appellant then offered his mother in surrebuttal, to confirm his story of being struck. The court refused to permit the mother to testify, on the ground that her testimony should have been offered in chief. We think the ruling was proper. Under any other ruling there could be an endless series of rebuttals and surrebuttals. If the mother were permitted to testify in rebuttal of the officer, then another officer could testify to rebut her, and an aunt could testify to rebut him, and so on endlessly. Furthermore, whether or not the defendant was struck was of no real significance in the case.

On the whole record we find no error prejudicial to the substantial rights of the appellant.

The judgment is affirmed.