# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 26, 2019
NOT TO BE PUBLISHED

FINAL

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

DATE 4/30/20

2018-SC-000282-MR

RUSTY WEDDLE                                                          APPELLANT

V.
ON APPEAL FROM RUSSELL CIRCUIT COURT
HONORABLE VERNON MINIARD, JR., JUDGE
NO. 14-CR-00097

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Rusty Weddle appeals from a judgment of the Russell Circuit Court convicting him of one count of second-degree rape; two counts of second-degree sodomy; two counts of first-degree unlawful transaction with a minor; one count of possession of matter portraying a sexual performance by a minor; and being a first-degree persistent felony offender. He was sentenced to life without the possibility of parole for twenty-five years.

As grounds for relief, Weddle contends that (1) he was entitled to a directed verdict on one of his second-degree sodomy charges; (2) his double jeopardy rights were violated; (3) the trial court erred by failing to instruct the jury on two lesser-included offenses; and (4) his right to a unanimous jury verdict was violated by two of the jury instructions. After review, we affirm.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. Victim One: Sarah[1]

In July of 2014, Sarah was a thirteen-year-old female who lived next door to Weddle, who was thirty-four. She also went to school with Weddle's son and was friends with Weddle's niece. During the first week of July 2014, Sarah lost her dog. She went around her neighborhood, including Weddle's house, to look for her dog. Weddle told her he had not seen her dog, so she gave him her number and asked him to contact her if he did.

At first, their conversations via text message were about her dog and were normal and appropriate. Soon though, their conversations turned toward sex. One night, Weddle asked Sarah to meet him at the shed behind his house. She testified that she knew if she went he would want to have sex with her. Nonetheless, she met him and they had sex.

After the shed encounter Weddle and Sarah continued to talk. One day later in July he asked her to come to his house and she agreed. This time they "messed around" in his living room. They did not have sex, but Weddle performed oral sex on her.

## B. Victim Two: Jessica

Jessica was twelve during the relevant time period. Like Sarah, Jessica also went to school with Weddle's son, but she never met Weddle in person. She messaged Weddle on Facebook and told him how similar he and his son

---

[1] We use pseudonyms in place of the victims' actual names to preserve their privacy.

looked. Following this conversation Weddle got Jessica's Kik Messenger and Snapchat information, and they began talking on those social media platforms.

Jessica's conversations with Weddle also soon became focused on sex. In September of 2014, he asked her to send nude pictures of herself to him, and she agreed. They exchanged several pictures on different days, all of which were found through a forensic search of his phone following his arrest.

Following a jury trial Weddle was convicted of one count of second-degree rape, two counts of second-degree sodomy, two counts of first-degree unlawful transaction with a minor, one count of possession of a matter portraying a sexual performance by a minor, and one count of being a first-degree persistent felony offender. He was sentenced to life without the possibility of parole for twenty-five years. This appeal followed.

Additional information is provided below as necessary.

## II. WEDDLE WAS NOT ENTITLED TO A DIRECTED VERDICT ON THE SECOND-DEGREE SODOMY CHARGE IN RELATION TO THE SHED ENCOUNTNER

Weddle argues that he was entitled to a directed verdict on the second-degree sodomy count related to his first sexual encounter with Sarah in his shed. This error was properly preserved for our review by Weddle's motion for directed verdict at the close of the Commonwealth's evidence and renewed motion for directed verdict at the close of all the evidence, both of which stated

the specific elements of the crime the Commonwealth allegedly failed to prove.[2] Therefore, our standard of review is whether, considering the evidence as a whole, it was clearly unreasonable for the jury to find guilt.[3]

The elements of second-degree sodomy are met when a person who is eighteen-years-old or older engages in deviate sexual intercourse with another person under the age of fourteen.[4] Deviate sexual intercourse is "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another."[5]

After the investigating officer in this case, Sergeant Chastity Shirley, discovered that Sarah and Weddle had a sexual relationship, she scheduled an appointment for Sarah with a Child Advocacy Center counselor.[6] Sgt. Shirley watched Sarah's interview with the counselor from another room. At trial, Sgt. Shirley testified that Sarah told the counselor she performed oral sex on Weddle during the shed encounter.

Four years later, when Sarah was asked at trial during direct examination whether she and Weddle had oral sex during the shed incident

---

[2] *Chavies v. Commonwealth*, 354 S.W.3d 103, 113 (Ky. 2011) (footnotes omitted).

[3] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

[4] Kentucky Revised Statutes (KRS) 510.080.

[5] KRS 510.010(1).

[6] Sgt. Shirley testified this is standard procedure in child sex abuse cases because counselors at the Center are better trained to interview children who are the victims of sexual abuse.

she replied, "I don't believe so." When the Commonwealth explored the issue further on re-direct the following exchange occurred:

> **CW:**[7] I had asked you before if, and I'm talking about this first encounter, the very first time in the shed, you had indicated you did not perform oral sex on him and he did not perform oral sex on you. Do you remember [the counselor at the Advocacy Center] asking you if he asked you to do anything to him?
>
> **S:**[8] I don't remember.
>
> **CW:** Do you recall answering, "he asked me to give him a blowjob?" Do you recall telling her that?
>
> **S:** I don't really remember that, but **I believe I did**.
>
> **CW:** Do you recall, and again we're talking about the first encounter, not the second but the first one in the shed, do you recall [the counselor] asking you if it happened, do you recall her asking you that?
>
> **S:** No, sir.
>
> **CW:** Do you recall saying, "yeah, it happened?"
>
> **S:** I don't remember.

(emphasis added). Weddle argues this entitled him to a directed verdict because, even though Sgt. Shirley testified that Sarah told the counselor she performed oral sex on Weddle during the shed incident, Sarah herself did not affirmatively say it happened at trial. We disagree.

---

[7] Commonwealth.

[8] Sarah.

It is well-established in our jurisprudence that a jury is free to believe the testimony of one witness over that of another witness.[9] Further, "[t]he testimony of a single witness is enough to support a conviction." *Id.* Sarah was a child in 2014 when the sexual abuse occurred, and the trial took place four years later. Her testimony, rather than stating affirmatively that oral sex did not happen, seemed to simply indicate that she could not remember if she performed oral sex on Weddle during the shed incident. Further, her response "I believe I did" may indicate that, while she did not remember *telling* the counselor she performed oral sex on Weddle, she believes she performed the act itself.

In contrast, Sgt. Shirley was an adult when she listened to Sarah's interview, and what Sarah told the counselor was part of her investigation. Therefore, it would not be clearly unreasonable for a jury to think that Sgt. Shirley's testimony was more credible on the issue. We therefore affirm Weddle's conviction of second-degree sodomy in relation to the shed incident.

## III. WEDDLE'S CONVICTIONS DID NOT VIOLATE HIS DOUBLE JEOPARDY RIGHTS

This error was properly preserved by Weddle's objection to the respective instructions on double jeopardy grounds.[10] Though, because Weddle has

---

[9] *Minter v. Commonwealth,* 415 S.W.3d 614, 618 (Ky. 2013) (citations omitted).

[10] Kentucky Rules of Criminal Procedure (RCr) 9.54(2): "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating

asserted a double jeopardy violation, we would be bound to review the error even if improperly preserved.[11] We review the alleged error of a trial court incorrectly giving instructions under an abuse of discretion standard.[12] "[T]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[13]

The right against double jeopardy is inviolable and belongs to all criminal defendants, both state and federal.[14] The Supreme Court of the United States' seminal case on double jeopardy is of course *Blockburger v. U.S.*[15] In *Blockburger*, the Supreme Court established that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[16]

Kentucky has since fully adopted the *Blockburger* approach. Under our jurisprudence "[d]ouble jeopardy does not occur when a person is charged with

specifically the matter to which the party objects and the ground or grounds of the objection."

[11] *Early v. Commonwealth*, 470 S.W.3d 729, 737 (Ky. 2015). ("Initially, we note that this issue is unpreserved. However, we will review for palpable error, as we have held that an appellant's failure to present a double jeopardy argument to the trial court should not result in allowing a conviction that violates double jeopardy to stand.").

[12] *Tunstull v. Commonwealth*, 337 S.W.3d 576, 583 (Ky. 2011).

[13] *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004).

[14] U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"); U.S. Const. amend. XIV; Ky. Const. §13 ("No person shall, for the same offense, be twice put in jeopardy of his life or limb[.]").

[15] 284 U.S. 299 (1932).

[16] *Id.* at 304.

two crimes arising from the same course of conduct, as long as each statute "requires proof of an additional fact which the other does not."[17]

In this case, Weddle first argues that the illegal sexual activities of second-degree rape and sodomy under jury instructions 5 and 6 are included in instruction number 8 on first-degree unlawful transaction with a minor. And, therefore, it was a violation of his double jeopardy rights to convict him on all three counts.

Weddle further makes a similar argument that it was a double jeopardy violation to convict him of second-degree sodomy under instruction number 7 along with first-degree unlawful transaction with a minor under instruction number 9. For the sake of clarity, these arguments are addressed individually.

**A. Rape, Sodomy (Shed Incident), and Unlawful Transaction with a Minor (Shed Incident)**

Weddle asserts that his conviction for second-degree rape in relation to the shed incident, his second-degree sodomy conviction, and his conviction for unlawful transaction with a minor violated his double jeopardy rights. We disagree.

Jury instruction number 5, for second-degree rape, directed as follows:

> You will find the Defendant guilty of Rape, 2nd Degree under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That between July 11, 2014, and July 16, 2014, in Russell County, Kentucky, before the finding of the

---

[17] *Commonwealth v. Burge*, 947 S.W.2d 805, 809 (Ky. 1996) (quoting *Blockburger v. U.S.*, 284 U.S. 299 (1932)).

8

indictment herein, the Defendant engaged in sexual intercourse with [Sarah] (the first encounter at the shed behind the defendant's house); AND

B. At the time of the intercourse, the Defendant was 18 years of age or older and [Sarah] was less than 14 years of age.

Jury instruction number 6, for second-degree sodomy read:

You will find the Defendant guilty of Sodomy, 2nd Degree under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:

A. That between July 11, 2014, and July 16, 2014, in Russell County, Kentucky, before the finding of the indictment herein, the Defendant engaged in deviate sexual intercourse with [Sarah] (the first encounter at the shed behind the defendant's house); AND

B. At the time of the deviate sexual intercourse, the Defendant was 18 years of age or older and [Sarah] was less than 14 years of age.

Finally, instruction number 8, on unlawful transaction with a minor, stated:

You will find the Defendant guilty of Unlawful Transaction with a Minor, 1st Degree under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:

A. That between July 11, 2014, and July 16, 2014, in Russell County, Kentucky, before the finding of the indictment herein, the Defendant knowingly induced or caused [Sarah] to engage in sexual intercourse and/or deviate sexual intercourse with him (the first encounter at the shed behind the defendant's house);

B. [Sarah] was less than 16 years of age; AND

C. The defendant knew [Sarah] was less than 16 years of age.

When the *Burge* test is applied it is clear Weddle's double jeopardy rights were not violated.

## 1. The Second-Degree Rape and Second-Degree Sodomy Convictions Did Not Violate Double Jeopardy

Again, the standard we apply is whether each instruction required proof of a fact which the other did not. Here, the rape instruction required a finding that Weddle engaged in "sexual intercourse" with Sarah, while the sodomy instruction required a finding that Weddle engaged in "deviate sexual intercourse" with Sarah. These are two distinct acts.

"Sexual intercourse" is "sexual intercourse in its ordinary sense and includes penetration of the sex organs of one person by any body part or a foreign object manipulated by another person. Sexual intercourse occurs upon any penetration, however slight; emission is not required."[18] In contrast, "deviate sexual intercourse" is "any act of sexual gratification involving the sex organs of one person and the mouth or anus of another."[19]

Therefore, because the rape instruction required a finding of sexual intercourse and the sodomy instruction required a finding of deviate sexual intercourse, we are satisfied that each instruction required a factual finding that the other did not.

---

[18] KRS 510.010(8). The jury instructions in this case tracked the statutory language verbatim.

[19] KRS 510.010(1). The jury instructions in this case tracked the statutory language verbatim.

## 2. The Second-Degree Rape and Unlawful Transaction with a Minor Convictions Did Not Violate Double Jeopardy

We are likewise satisfied that Weddle's convictions for rape and unlawful transaction with a minor under jury instructions 5 and 8, respectively, did not violate his double jeopardy rights.

The rape instruction only requires a finding that Weddle engaged in sexual intercourse with Sarah. The unlawful transaction with a minor instruction, on the other hand, requires the jury to find that Weddle "knowingly induced or caused [Sarah] to engage in sexual intercourse and/or deviate sexual intercourse." Knowingly inducing a minor to engage in a sexual act is different than committing the act itself. Further, the rape instruction required a finding that Sarah was less than fourteen years old, while the unlawful transaction with a minor instruction required a finding that she was less than sixteen. Finally, the unlawful transaction with a minor instruction required the jury to find that Weddle knew Sarah was under the age of sixteen. The rape instruction has no such requirement.

## 3. The Second-Degree Sodomy and Unlawful Transaction with a Minor Convictions Did Not Violate Double Jeopardy

We are likewise satisfied that Weddle's convictions of sodomy and unlawful transaction with a minor under instructions 6 and 8 did not violate his double jeopardy rights. Again, the sodomy instruction only required a finding that Weddle engaged in deviate sexual intercourse with Sarah, whereas the unlawful transaction with a minor instruction required a finding that he

11

knowingly induced or caused Sarah to engage in sexual intercourse and/or deviate sexual intercourse. The sodomy instructions also required a finding that Sarah was less than fourteen years old at the time of the sodomy, whereas the unlawful transaction with a minor instruction required a finding that she was less than sixteen. And, finally, the unlawful transaction with a minor instruction required a finding that Weddle knew Sarah was under sixteen years old, and the sodomy instruction did not.

## B. Sodomy (Living Room Incident) and Unlawful Transaction with a Minor (Living Room Incident)

Weddle next alleges that it was a double jeopardy violation to convict him of second-degree sodomy under instruction number 7 and unlawful transaction with a minor under instruction number 9. We disagree.

The instruction for sodomy in relation to the living room incident provided:

> You will find the Defendant guilty of Sodomy, 2nd Degree under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That between July 13, 2014, and July 18, 2014, in Russell County, Kentucky, before the finding of this indictment herein, the Defendant engaged in deviate sexual intercourse with [Sarah] (the second encounter inside the defendant's house on the couch); AND
>
> B. At the time of the deviate sexual intercourse, the Defendant was 18 years of age or older and [Sarah] was less than 14 years of age.

12

The requirements for unlawful transaction with a minor under jury instruction number 9 were:

> You will find the Defendant guilty of Unlawful Transaction with a minor, 1st Degree under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That between July 13, 2014, and July 18, 2014, in Russell County, Kentucky, before the finding of the indictment herein, the Defendant knowingly induced or caused [Sarah] to engage in deviate sexual intercourse with him (the second encounter inside the defendant's house on the couch);
>
> B. [Sarah] was less than 16 years of age; AND
>
> C. The defendant knew [Sarah] was less than 16 years of age.

Our analysis here is precisely the same as in part II(A)(3), *supra*: sodomy requires a finding of the act of deviant sexual intercourse while unlawful transaction with a minor requires that Weddle knowingly induced or caused Sarah to engage in deviant sexual intercourse; sodomy requires a finding that Sarah was less than fourteen years old while unlawful transaction with a minor requires that she was less than sixteen years old; and unlawful transaction with a minor requires a finding that Weddle knew Sarah was less than sixteen years old, and sodomy does not have that requirement.

Accordingly, *Burge* is satisfied, and Weddle's double jeopardy rights were not violated. We therefore affirm his convictions for one count of second-degree rape, two counts of second-degree sodomy, and two counts of first-degree unlawful transaction with a minor.

13

# IV. THE TRIAL COURT DID NOT ERR IN DENYING WEDDLE'S MOTION TO INSTRUCT THE JURY ON ATTEMPTED SECOND-DEGREE RAPE AND FIRST-DEGREE SEXUAL ABUSE

This error was properly preserved for our review by Weddle's argument for, and tender of, instructions on the lesser included offenses of attempted second-degree rape and first-degree sexual abuse.[20] Accordingly, we review the trial court's decision to not instruct on the lesser included offenses for abuse of discretion.[21]

A lesser-included offense is one that is established by proof of the same or less than all of the facts required to prove the primary offense.[22] Trial courts have a duty to give jury instructions on the totality of the law of a case, including any lesser included offenses.[23] However, that duty does not require a trial court to give an instruction on a lesser included offense that lacks an evidentiary foundation.[24] Therefore, "[a]n instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater

---

[20] RCr 9.54(2).

[21] *Harris v. Commonwealth*, 313 S.W.3d 40, 50 (Ky. 2010).

[22] KRS 505.020(2)(a): "(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when: (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]"

[23] *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998).

[24] *Id.* at 929; *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015), *as corrected* (Aug. 26, 2015); *Payne v. Commonwealth*, 656 S.W.2d 719, 721 (Ky. 1983).

14

offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense."[25]

Here, Weddle argues he was entitled to an instruction on the lesser-included offense of attempted second-degree rape in relation to the shed incident. He also argues that he was entitled to an instruction on the lesser-included offense of first-degree sexual abuse in relation to the living room incident. These arguments are addressed in turn.

## A. Attempted Second-Degree Rape

Weddle contends that he was entitled to an instruction on attempted second-degree rape in relation to the shed incident. A defendant is guilty of criminal attempt when he takes a substantial step in a course of conduct planned to culminate in the crime.[26] Weddle reasons that his substantial step towards second-degree rape was meeting Sarah in the shed. But, because the doctor who examined Sarah testified that her vaginal exam was normal, a juror could believe that no sexual intercourse occurred.

We disagree with this argument for two reasons. First, Sarah stated unequivocally that she met Weddle in the shed and they had sex. Weddle's theory of the case, on the other hand, was that he did not meet her in the shed and no sexual encounter occurred. Second, the doctor who examined Sarah testified that, statistically speaking, Sarah's vaginal exam would appear normal even if she did have sex. Therefore, there was simply no evidentiary foundation

---

[25] *Houston*, 975 S.W.2d at 929.
[26] KRS 506.010.

15

to give the jury an attempted second-degree rape instruction, and the trial court did not abuse its discretion in refusing to do so.

## B. First-Degree Sexual Abuse

Weddle also argues that he was entitled to a first-degree sexual abuse instruction in relation to the living room incident with Sarah. KRS 510.110 provides in relevant part that a person is guilty of first-degree sexual abuse when, being twenty-one years of age or older, he subjects another person who is less than sixteen years old to sexual contact. Sexual contact in turn is defined as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying the sexual desire of either party."[27]

Sarah testified that during the living room incident they "messed around," and, specifically, that he put his mouth on her genitals. Again, Weddle's position was that this incident never occurred. Based on this evidence Weddle asserts that the jury could have found that he and Sarah "messed around" but did not have oral sex. But Sarah was not asked to expound on what she meant by "messing around" apart from clarifying that they had oral sex. The evidence was therefore sufficient to warrant a second-degree sodomy instruction, but it was insufficient for a first-degree sexual abuse instruction. The trial court did not abuse its discretion, and we affirm its decision to reject the lesser included instruction.

---

[27] KRS 510.010(7).

16

# V. WEDDLE'S RIGHT TO A UNANIMOUS VERDICT WAS NOT VIOLATED

Weddle concedes these alleged errors were not properly preserved and has requested palpable error review under RCr 10.26.

> Under RCr 10.26, an unpreserved error may generally be noticed on appeal if the error is palpable and if it affects the substantial rights of a party. Even then, relief is appropriate only upon a determination that manifest injustice resulted from the error. For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable.[28]

In Kentucky, all criminal defendants are entitled to a unanimous jury verdict of guilty in order to be convicted.[29] Weddle alleges there were two separate unanimous verdict violations under *Johnson v. Commonwealth*[30] in this case. We will address each of these arguments in turn.

## A. Instruction on First-Degree Unlawful Transaction with a Minor for the Shed Incident

Weddle argues his right to a unanimous jury verdict was violated by instruction number 8 on unlawful transaction with a minor in relation to the shed incident, which required the jury to find Weddle "knowingly caused or induced Sarah to engage in sexual intercourse and/or deviate sexual intercourse."

---

[28] *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotations omitted).

[29] *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978) ("Section 7 of the Kentucky Constitution requires a unanimous verdict reached by a jury of twelve persons in all criminal cases.").

[30] 405 S.W.3d 439 (Ky. 2013); *see also Kingrey v. Commonwealth*, 396 S.W.3d 824 (Ky. 2013).

He reasons that some jurors could have found him guilty because they believed he knowingly caused or induced Sarah to engage in sexual intercourse while others could have found him guilty because they believed he knowingly caused or induced Sarah to engage in deviate sexual intercourse. And, because the instruction does not specify which type of intercourse it was meant to cover, the unanimous verdict rule of *Johnson* was violated. However, we believe these circumstances are clearly distinguishable from *Johnson* and its corresponding case law.

In *Johnson*, a mother was tried for the murder and criminal abuse of her two-year-old son. *Id* at 441. In support of the one count of criminal abuse against her, a forensic pathologist testified that the infant had two leg fractures and determined they were inflicted on two separate occasions based on the amount of healing that occurred. *Id.* at 446. One fracture happened around mid-September 2009, while the other occurred around the first week of October 2009. *Id.*

This Court found the instruction violated the defendant's right to a unanimous verdict because it required finding that the abuse that caused the fractures occurred "between the dates of August 28, 2009, and October 23, 2009," but both of the infant's leg fractures could have independently qualified as criminal abuse, and the instruction did not require the jury to differentiate which of the two separate occurrences was the basis for the conviction. *Id.* at 448-49. The resulting rule was that a defendant's right to a unanimous verdict

18

is violated when a general jury verdict is based on an instruction including two or more separate instances of a criminal offense. *Id.* at 449.

In this case, there was only one instance of conduct that could have qualified as unlawful transaction with a minor under instruction number 8, and the instruction itself is very specific about which instance that was:

> You will find the Defendant guilty of Unlawful Transaction with a Minor, 1st Degree under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That between July 11, 2014, and July 16, 2014, in Russell County, Kentucky, before the finding of the indictment herein, the Defendant knowingly induced or caused [Sarah] to engage in sexual intercourse and/or deviate sexual intercourse with him **(the first encounter at the shed behind the defendant's house)**.

(emphasis added). While the instructions do contain a range of dates similar to that in *Johnson*, the range is only out of necessity because Sarah could not remember the specific date on which the shed incident occurred. What we do not have is conduct occurring on two different dates that could each independently qualify as unlawful transaction with a minor charged under the same instruction. Therefore, the *Johnson* rule is not triggered, and Weddle's right to a unanimous verdict was not violated.

Instead, we agree with the Commonwealth's contention that *Cox v. Commonwealth*[31] applies to these circumstances, and Weddle's conviction must therefore stand. In *Cox*, the defendant was convicted for the murder of his

---

[31] 553 S.W.3d 808 (Ky. 2018).

four-month-old son.[32] At trial, two witnesses testified they saw the defendant both shake and strike the child. *Id.* The murder instructions directed in pertinent part:

> You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That...the Defendant, **by hitting, shaking or both,** killed [the child]; AND
>
> B. That in so doing:
>
> (1) He caused the death of [the child] intentionally[.]

*Id.* at 811 (emphasis added). The defendant argued this instruction violated his right to a unanimous verdict because it "failed to require all twelve members of the jury to identify the specific physical act by [the defendant] that caused [the child's] death." *Id.*

This Court disagreed, noting that the instruction at issue was a "combination" instruction, i.e. one that "permit[s] a conviction of the same offense under either of multiple alternative theories."[33] And, that "[a] 'combination' instruction permitting a conviction of the same offense under either of multiple alternative theories does not deprive a defendant of his right to a unanimous verdict, so long as there is evidence to support a conviction

---

[32] *Id.* at 810.

[33] *Id.* at 812 (citing *Robinson v. Commonwealth*, 325 S.W.3d 368, 370 (Ky. 2010)).

under either theory." *Id.* It ultimately found that the defendant's right to a unanimous verdict was not violated because:

> A conviction for murder, according to the statute, does not require the fact-finder to determine the precise physical act of [the defendant] that was the actual cause of [the child's] death. All that must be shown, to satisfy the element of causation under the statute, is that the defendant did *something* to cause the death of the victim...The dispute as to the specific physical act that [the defendant] performed to cause the death of the of his son is "a disagreement about means" that "[does not matter]" because "all 12 jurors unanimously concluded that the [Commonwealth] had proved the necessary related element, namely, that "[the defendant] caused [the child's] death...Because the jury instructions forced the jury to unanimous agreement that [the defendant] caused [the child's] death, regardless of the specific means, no unanimity error occurred because of the inclusion of the phrase "hitting, shaking, or both."

*Id.* at 813 (emphasis in original).

Under the combination instruction in this case, the jury could have concluded that Weddle committed the crime of unlawful transaction with a minor by either knowingly inducing or causing Sarah to engage in *sexual intercourse*, or knowingly inducing or causing Sarah to engage in *deviate sexual intercourse* during the shed encounter. There was evidence to support a conviction under either theory: Sarah testified that they had sexual intercourse and that she believed she performed oral sex on Weddle, and Sgt. Shirley testified that Sarah told a counselor from the advocacy center that they had oral sex. In addition, the jury found Weddle guilty of both rape and sodomy in relation to the incident.

21

Therefore, like in *Cox*, Weddle's argument at its core is a "disagreement about means" because all twelve jurors unanimously agreed that he knowingly caused or induced Sarah to commit some type of sexual act during a time he knew she was under the age of sixteen. Thus, we are satisfied that his right to a unanimous verdict was not violated by jury instruction number 8.

**B. Instruction for Possession of a Matter Portraying Sexual Performance by a Minor**

Weddle's final argument is that his right to a unanimous jury verdict was violated by instruction number 10: possession or viewing of matter portraying a sexual performance by a minor (possession). This alleged error is also unpreserved, and Weddle has requested palpable error review.

Instruction number 10 provides:

> You will find the Defendant guilty of Possession or Viewing of a Matter Portraying a Sexual Performance by a Minor under this instruction if you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That on or about September 7, 2014, September 13, 2014 or September 14, 2014, in Russell County, Kentucky, before the finding of the indictment herein, the Defendant knowingly had in his possession or control any matter visually depicting an actual sexual performance by a minor; AND
>
> B. When he did so, he had knowledge of the content and character of the matter and knew that the person engaged in the sexual performance [Jessica] was a minor.

Again, relying on *Johnson*, Weddle asserts that his right to a unanimous verdict was violated by this instruction because the jurors could have believed

22

he possessed any of the four nude photos of Jessica on any of the three days listed in the instruction, but the instruction does not specify which nude photo on which date it is meant to cover. Because we conclude that the giving of instruction number 10 was invited error, the error is waived, and we decline to address it.

During the discussion between the trial court, the Commonwealth, and the defense about jury instructions, the following exchange pertaining to instruction 10 occurred:

> **COURT**: What about the possession of—
>
> **DEFENSE**: Judge, to be honest I may be making a mistake but **I don't think I can say much about the dates**, I think that's pretty plain. You've either done that, or, that's the way I take it.
>
> **COURT**: Uh-huh (affirmative).
>
> **CW**: Judge, just so the record is clear, I know that when we first got here yourself, myself, and [the defense] all discussed what I was concerned about last night. As I was looking at these instructions, all of the photos that are on that CD did not get acknowledged by [Jessica] because for whatever reason, and I'm not a tech person, they didn't come up. And **so we've all agreed that there is only one count where originally there were four**. I just wanted to make sure because, we talked about it out there, but it wasn't on the record. I just wanted to make it clear that we've all agreed there's only one count based on the way that the evidence came in or, unfortunately for me I guess, didn't come in.
>
> **DEFENSE**: And as for me, I think that kind of stuff was only maintained particularly to [Jessica].
>
> **CW**: Yes, it was.

It is well-established in our jurisprudence that "[g]enerally, a party is estopped from asserting an invited error on appeal."[34] This is particularly true where when "it is not clear that the defendant was prejudiced thereby."[35] Invited errors that amount to waiver are those that reflect the party's knowing relinquishment of a right.[36] The rationale behind this rule is to prevent a defendant from committing an act and later complaining on appeal that the trial court erred to his detriment.[37] Here, Weddle is doing just that.

Weddle's attorney specifically agreed to the dates used in jury instruction number 10 by saying, "I don't think I can say much about the dates." Notwithstanding this explicit acceptance, Weddle is now arguing against those dates: it is his contention that he could have possessed any of the pictures on any of the three dates provided and therefore his right to a unanimous verdict was violated. But allowing him to do so after agreeing there was no error in instruction 10 regarding the dates would be in direct contradiction to the spirit and letter of the prohibition against appealing invited errors.

Further, it is clear from the Commonwealth's explanation that, because of a technical malfunction during the presentation of the photographs that provided the basis for charging Weddle with possession, Weddle, the

---

[34] *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011).

[35] *Gray v. Commonwealth*, 203 S.W.3d 679, 686 (Ky. 2006), *as corrected* (Oct. 20, 2006), *as corrected* (Oct. 31, 2006).

[36] *Quisenberry*, 336 S.W.3d at 38 (citing *United States v. Perez*, 116 F.3d 840 (9th Cir.1997)).

[37] *See Gray*, 203 S.W.3d at 686

24

Commonwealth, and the court all agreed that the four counts of possession would be dropped to one count and instructions would be given on that count alone. So not only did Weddle agree to instruction number 10 being presented to the jury, he certainly was not "prejudiced thereby."

## VI. CONCLUSION

We affirm each of Weddle's convictions, holding: (1) he was not entitled to a directed verdict on his second-degree sodomy charge in relation to the shed incident; (2) his double jeopardy rights were not violated by the jury instructions in this case; (3) the trial court did not err by declining to instruct the jury on the lesser-included offenses of attempted second-degree rape and first-degree sexual abuse; and (4) his right to a unanimous jury verdict was not violated by the jury instruction on unlawful transaction with a minor in relation to the shed incident. We further hold that the alleged error regarding the jury instruction on possession or viewing of matter portraying a sexual performance by a minor of a matter was invited error, and thus decline palpable error review.

All sitting. All concur.

COUNSEL FOR APPELLANT:


Robert Chung-Hua Yang
Assistant Public Advocate
Frankfort, Kentucky


COUNSEL FOR APPELLEE:

Andy Beshear,
Attorney General of Kentucky

Courtney J. Hightower,
Assistant Attorney General of Kentucky
Frankfort, Kentucky

# Supreme Court of Kentucky

## 2018-SC-000282-MR

RUSTY WEDDLE                                                          APPELLANT

V.
ON APPEAL FROM RUSSELL CIRCUIT COURT
HONORABLE VERNON MINIARD, JR., JUDGE
CASE NO. 2014-CR-00097

COMMONWEALTH OF KENTUCKY                                              APPELLEE

## ORDER DENYING PETITION FOR REHEARING

The Petition for Rehearing, filed by the APPELLANT, of the Memorandum

Opinion of the Court, rendered September 26, 2019, is DENIED.

All sitting. All concur.

ENTERED: April 30, 2020.

_____
CHIEF JUSTICE